## JOURNAL OF COMMERCE PUB. CO. v. TRIBUNE CO. et al.

(Circuit Court of Appeals, Seventh Circuit. October 3, 1922.)

### No. 3116.

1. Monopolies ⊚➝12(3)—Newspaper held entitled to refuse to sell to carriers carrying another paper.

Where the evidence showed that newspaper carriers owned their own routes and purchased outright each day the number of papers needed for distribution, that there was no contract by which a certain publisher could control what other newspapers the carrier should distribute, or by which the carriers could require the publisher to continue to sell to them its newspapers from day to day, the publisher had the right to notify a carrier that, if he handled a particular rival paper, it would no longer sell him its papers, without violating the federal anti-trust laws, the common law, or the local statutes, and the exercise of the legal right had a moral justification; the business of the carriers having been built up by the enterprise of the publisher.

2. Newspapers ⊚➝6¼, New, vol. 13A Key-No. Series—Publication is a private business.

The publication of a newspaper is a private business, so that the publishers have a right to refuse to sell their papers to certain carriers.

3. Injunction ⊚➝12—Not warranted for past trespasses, in absence of threat to renew.

Past trespasses by the agents of defendant newspaper publisher, interfering at some news stands with the sale of plaintiff's papers, do not warrant the issuance of an injunction, where at the time of trial and entry of the decree there was no apparent threat to renew them.

4. Appeal and error ⊚➝1152—Inadvertent denial of damage for past trespasses modified on appeal.

A decree rightly denying an injunction, but inadvertently failing to provide for the assessment of damages for past trespasses by defendant's agents on plaintiff's rights, will be modified on appeal, so as to reserve plaintiff's right to apply for an assessment of damages.

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Illinois.

---

⊚➝For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Suit in equity by the Journal of Commerce Publishing Company against the Tribune Company and others. Decree for defendants, and complainant appeals. Decree modified, to reserve to complainant the right to apply for an assessment of damages for past trespasses, and, as modified, affirmed.

Walter W. Ross, of Chicago, Ill., for appellant.

Howard Ellis, of Chicago, Ill., for appellees.

Before BAKER, ALSCHULER, and EVANS, Circuit Judges.

BAKER, Circuit Judge. Appellant failed in its suit for injunction and damages on account of acts (quoting from the bill) "of conspiracy, unfair competition, monopoly, restraint of trade, boycotting, wrongful and malicious interference with contractual and voluntary relations."

Respecting federal jurisdiction of the controversies, the bill rested on two grounds: Violations of federal anti-trust laws; diversity of citizenship, whereby the federal court was obliged to determine an intrastate controversy ruled exclusively by intrastate law.

Concerning remedies, the bill also bore a double aspect: Looking the the future, an injunctional decree to prevent the continuance of trespasses; looking to the past, a money judgment for the damages inflicted by past trespasses.

1. Federal basis for injunction.

In the trial court the judge had the advantage of determining the weight and credibility of the testimony by seeing and hearing the witnesses. Our examination of the printed record leads to the conclusion that his findings of fact were well sustained by the evidence and should be approved.

Briefly, the ultimate findings were these: Individual defendants had no malice toward plaintiff and acted only on behalf of the Tribune Company; directors and executive officers of the Tribune Company (and therefore the corporation) had no malice, but acted in good faith on lines laid out by counsel; therefore, if the advice correctly applied the law to the conceded facts, there was no violation of federal anti-trust laws in any respect.

[1] Conceded facts were that "carriers" owned their "routes"; that they purchased outright each day the number of newspapers needed for distribution; that there was no contract or understanding by which the Tribune Company could control what other newspapers the carriers should distribute; and that there was no contract or understanding by which the carriers could require the Tribune Company to continue to sell them its newspapers from day to day.

In the circumstances, counsel's advice that the Tribune Company had the right to give and to act upon a notice to each carrier that, if he handled appellant's papers, the Tribune Company would no longer sell him its papers, was a correct interpretation and application of federal law. United States v. Colgate & Co., 250 U. S. 300, 39 Sup. Ct. 465, 63 L. Ed. 992, 7 A. L. R. 443; United States v. Schrader's Son, Inc., 252 U. S. 85, 40 Sup. Ct. 251, 64 L. Ed. 471; Federal Trade Commission v. Gratz, 253 U. S. 421, 40 Sup. Ct. 572, 64 L. Ed. 993.

When one's acts are wholly within the law, he needs no additional justification in court. But the record in this cause exhibits a strong moral ground for the Tribune Company to insist upon its legal rights with the carriers. During long years the Tribune Company devoted great attention and spent large sums in building up a carrier system through which its papers could promptly and reliably be distributed to subscribers. By means of premiums and various advertising methods it secured new subscribers and furnished their names and addresses to the nearest Tribune carrier. In territory where the business was not large enough to pay a carrier for delivering the papers, it paid the carrier until the difference between the established buying and selling prices of the papers would afford satisfactory pay. For these and many other similar expenditures of effort and money, each carrier, though owning his own "route" and buying outright from day to day his copies of the paper, recognized that the Tribune Company had at least a moral right to a voice in controlling the methods and personnel of the carriers.

[2] Predication of the Tribune Company's legal and moral right is on the assumption that publishing a newspaper is a private business. Appellant's suggestion that the business is "impressed with a public interest" (citing Inter-Ocean Publishing Co. v. Associated Press, 184 Ill. 438, 56 N. E. 822, 48 L. R. A. 568, 75 Am. St. Rep. 184, and Munn v. Illinois, 94 U. S. 113, 24 L. Ed. 77) needs no attention, we think, except to show that it is not being passed unnoticed.

2. Federal basis for damages.

As there are no acts under this heading, other than those which under the preceding heading have been found lawful, there is no liability for damages.

[3] 3. Nonfederal basis for injunction.

(a) Intrastate transactions of the same character as the interstate transactions already considered are found for the same reasons to be free from condemnation under the common law and local statutes.

(b) Certain trespasses upon appellant's rights were unquestionably committed at some of the news stands on the streets of Chicago; and there were some other infractions of like character. These acts were done by subordinate agents before the bill was filed. At the time of the trial and entry of the decree there was no apparent threat to renew these trespasses, and the trial court was therefore warranted in refusing to award an injunction on that account.

[4] 4. Nonfederal basis for damages.

(a) As the facts mentioned in paragraph 3 (a) were lawful, there is no liability for damages on account thereof.

(b) Acts referred to in paragraph 3 (b) were unlawful. But, looking to the future, there was not such a likelihood of their repetition as to require an injunction. That finding, however, was not an adjudication that, looking to the past, there was no liability for the damages inflicted.

In the record as we read it we find a preliminary agreement that the evidence bearing on appellant's right to an injunction should first

286 F.—8

be presented, and the right determined, and then, depending on the nature and extent of the injunctional decision, appellant should have the right to present evidence of the amount of its damages, if any liability therefor should remain under the injunctional decision. When the trial judge announced his decision that all injunctional relief would be denied, appellant's counsel called attention to the element of damages as being undisposed of, and to judge from the colloquy in the record it may have been an oversight that a reservation respecting damages for proven trespasses by agents acting on behalf of the Tribune Company was omitted from the decree. At all events, in the interests of justice, such a reservation should be made.

The decree, modified to reserve to appellant the right to apply to the District Court within 10 days after our mandate is issued for a hearing and an assessment of damages on account of trespasses by the Tribune Company's agents at news stands in Chicago and similar trespasses, is

Affirmed.