JOHN A. LOCKER et al., Appellants, *v.* AMERICAN TOBACCO
COMPANY et al., Respondents.

*Locker* v. *American Tobacco Co.*, 121 App. Div. 443, affirmed.
(Argued April 1, 1909; decided May 11, 1909.)

APPEAL from a judgment of the Appellate Division of the
Supreme Court in the second judicial department, entered
October 25, 1907, affirming a judgment in favor of defendants
entered upon a dismissal of the complaint by the court at
Special Term in an action to enjoin an alleged unlawful
combination in restraint of trade.

*Frederick P. Bellamy* for appellants.

*Junius Parker*, *William R. Perkins*, *Jonas F. Mann*,
*William N. Cohen* and *Samuel W. Weiss* for respondents.

Judgment affirmed, with costs, on opinions below.
Concur: EDWARD T. BARTLETT, HAIGHT, WILLARD BART-
LETT and CHASE, JJ. CULLEN, Ch. J., concurs in opinion,
in which VANN, J., concurs. Taking no part: GRAY, J.

CULLEN, Ch. J. I concur in the affirmance of the judg-
ment appealed from on the ground stated in the opinions of
the learned justices of the Appellate Division. While the
complaint probably stated a good cause of action where it
charged that the defendants combined and threatened to
destroy plaintiffs' business and boycott tnem, these allegations
were withdrawn at the opening of the trial. After this action
by the plaintiffs' counsel, the charge against the defendants
was reduced substantially to this : That the defendants owned
and controlled so large a share of the staple articles and kinds
of tobacco marketed in the country that no general dealer or
jobber could successfully do business without handling the
merchandise owned and controlled by the American Tobacco
Company ; that the said company had appointed the Metro-
politan Tobacco Company its exclusive selling agent in New
York, and that the defendants refused to sell any of their
goods to the plaintiffs, whereby their business was destroyed.

If there were any charge of combination between independent or distinct manufacturers or dealers in tobacco to refuse to sell the plaintiffs goods and thus boycott them, it would be an actionable wrong and give rise to a cause of action under the authority of *Straus* v. *Am. Publishers' Assn.* (177 N. Y. 473). Nothing of this kind, however, is charged. The acts of the Metropolitan Company are alleged to have been done by it as agent of the American Tobacco Company. That company is purely a private corporation and stands before the law as to the control, management and disposition of its property the same as any individual or person. It is unquestionable that the owner of property may sell to whom he chooses, and equally he may control his agent. A refusal to sell to any particular individual becomes illegal only when it is done in pursuance of a combination with other owners to injure the individual with whom they refuse to deal. In other words, it is the combination of several persons which makes that action illegal which, if done by a single person without any agreement for joint action, would be legal.

It is contended, however, that a different rule should prevail where a single person or corporation controls substantially the whole production or output of a staple article. I do not think the extent of the business can affect the rights of the parties. If it is an inherent right of the owner of property to refuse to sell his property to any particular individual, he cannot be deprived of that right simply because of the magnitude of his business or his wealth. Nor do I see how the courts could well draw a line between individuals and corporations who may exercise their full right of property, and those to whom, on account of their wealth, that right is to be denied. If the aggregation of enormous industries under a single control is an economic evil, as to which I express no opinion, the evil can be easily cured by the legislature. Practically none of these great combinations can be made except by the formation of a corporation, and the legislature has most extensive power in dealing with corporations. True it may not directly deprive them of any of their property rights, but none of these great combinations could live unless incorporated; for doing business as a partnership — each

partner liable for all the obligations of the firm, the partnership subject to dissolution on the death of every partner — the business would necessarily soon come to an end. With the exception of the very few corporations created prior to the Constitution of 1846, the legislature may repeal the charter of any domestic corporation (*Lord* v. *Equitable Life Assurance Soc'y.*, 194 N. Y. 212), and it may require as a condition of incorporation that the corporation shall surrender property rights. Thus, in *Lake S. & M. S. Ry. Co.* v. *Smith* (173 U. S. 684) the Supreme Court of the United States held that a legislative enactment requiring the issue of one thousand mile tickets was an invasion of the property rights of the railroad company. The construction of the Erie railroad long antedated the enactment of any such statute in this state. Subsequent to the statute the railroad was foreclosed and its purchasers formed a corporation under the general statute. It was held that the purchasers by taking advantage of the privilege of incorporating subjected themselves to the requirements of the legislature and were obliged to issue the mileage books. (*Minor* v. *Erie R. R. Co.*, 171 N. Y. 566.) The opinion of Chief Judge PARKER in that case was based on the decision of the Supreme Court of the United States in *People ex rel. Schurz* v. *Cook* (148 U. S. 397). The same doctrine was again asserted by the Supreme Court in *Grand Rapids & Ind., Ry. Co.* v. *Osborn* (193 U. S. 17).

Both of the defendants are foreign corporations, but the control of the legislature over them is fully as plenary as in the case of domestic corporations. With the exception of a very limited class, such as corporations engaged in interstate transportation and the like, a foreign corporation cannot breathe or exist within the limits of a state except by the consent of the state. The state may refuse admittance to such a corporation for any reason, and unless the right has been contracted away, which is hardly possible under the Constitution of this state, it can equally unceremoniously, turn it out. A statute prohibiting any foreign corporation doing business within a state from removing suits against it to the Federal courts is void (*Insurance Co.* v. *Morse*, 20 Wall. 445); but though the statute cannot prevent the cor-

poration from removing the suit, it may expel the corporation because it has removed the suit. (*Security Mut. L. Ins. Co.* v. *Prewitt*, 202 U. S. 246.) If the case before us does present the existence of any real economic evil, that evil may be easily dealt with by the legislature.

The judgment should be affirmed, with costs.