Burke, J.
(dissenting). Plaintiffs appeal from a unanimous reversal by the Appellate Division, First Department, of an order of the Supreme Court, New York County, at Special Term, denying defendant Dretzin’s motion to dismiss the four causes of action alleged against him in the complaint herein and for summary judgment.
The complaint purports to allege 12 different causes of action. The eighth and ninth are based on Dretzin’s alleged inducement of others to conspire against plaintiffs (hereinafter referred to simply as “plaintiff”) for the purpose of preventing his engaging in lawful competition with the conspirators in the sale of Volkswagen automobiles, in violation of section 340 of the General Business Law (the Donnelly Act).
Defendant Dretzin was at the time in question a stockholder and director in both World-Wide Automobiles Corporation (World-Wide) and Queensboro Motors, Inc. (Queensboro), both defendants here, and both, alleged to be parties to the conspiracy. World-Wide is a wholesale distributor of Volkswagen automobiles, which function includes selection of ‘ ‘ authorized dealers ’ ’ for sale of these cars to the general public. Queensboro is an authorized Volkswagen dealer in the borough of Queens in the City of New York. It was the desire of the individual plaintiff, Rothschild, to obtain a franchise as an authorized Volkswagen dealer and toward this end he secured through a mutual friend an introduction to Dretzin who put him in touch with the officers of World-Wide in charge of selecting new dealers.
After a series of negotiations between plaintiff and WorldWide, Rothschild was informed that he had been ‘ ‘ approved as the dealer prospect for the Volkswagen dealership to be located in Merrick, New York.” This approval was contingent, however, upon his securing a site for the dealership satisfactory to World-Wide and final approval of the appointment by Volkswagen of America, Inc., also a defendant and alleged co-conspirator and the Volkswagen importer from whom World-Wide had itself received its franchise. The dealership was to be located in Merrick, New York, but plaintiff finally selected a site in *985 Freeport, New York, which borders Merrick, and this was apparently agreeable to World-Wide.
At this stage of the negotiations, plaintiff alleges that be contacted Dretzin by phone in order to thank him for his assistance. He also alleges that when he informed Dretzin of the location of the dealership Dretzin announced he had not realized that Rothschild intended to sell Volkswagens in competition with Dretzin and other dealers, who were located in this market. Dretzin thereupon threatened to do everything in his power to have the dealership cancelled. Plaintiff claims further that Dretzin induced other Volkswagen dealers to join him in bringing pressure upon World-Wide and thus succeeded in blocking the award of the dealership to plaintiff.
Plaintiff’s complaint adequately states a cause of action based upon conspiracy to .restrain trade in violation of the Donnelly Act. The affidavits and exhibits submitted on the motion for summary judgment raise a triable issue of fact as to whether a Donnelly Act violation was committed and whether such violation caused the damages claimed by plaintiff.
The question of whether there was here an unlawful conspiracy can only be answered when the nature of the alleged restraint has been fully canvassed. I am not prepared to say on this motion for summary judgment whether the restraint was purely ‘ ‘ vertical ’ ’ in its origin, and thus lawful if reasonable, or “ horizontal,” and thus per se unlawful. An attempt is made to characterize what allegedly occurred between Dretzin and the other dealers and World-Wide as a “vertical assignment to dealers of areas of primary responsibility.” But this, of course, is not at all what plaintiff alleges. He claims that Dretzin and the other dealers entered into a ‘ ‘ horizontal ’ ’ conspiracy among competitors to prevent the entry of plaintiff or any other potential competitor into their market. The arrangement would take on a ‘ ‘ vertical ’ ’ aspect only after the conspirators secured the acquiescence of World-Wide. Thus, this case, as alleged by plaintiff, is far different from those vertical arrangements, such as exclusive agency contracts, to which it would be likened and which arrangements our courts have held to be lawful absent a showing of conspiracy or concerted refusal to deal on the part of suppliers. (See, e.g., Locker v. American Tobacco Co., 121 App. Div. 443, affd. 195 N. Y. 565.) The genesis of the restraint of trade charged here is not a contract between a manufacturer *986 or supplier and its dealers, whereby the manufacturer or supplier, in order to secure the most effective distribution of its goods, agrees to sell only to certain dealers and not to others. Certainly restraint of trade is not the prime motive of such a contract and any anti-competitive effect it may have is only ancillary to its proper and legitimate business purposes. In the instant case the sole object of the conspiracy charged was the elimination of a potential competitor. Dretzin and the others are charged with intending and accomplishing through the combination of their forces what the Appellate Division for the First Department condemned when done by but a single powerful dealer, namely, exerting coercive pressure upon their supplier to persuade it not to sell to the plaintiff, for the purpose of destroying the plaintiff as a competitor in the supplier’s product. (See Alexander’s Dept. Stores v. Ohrbach’s Inc., 266 App. Div. 535; see, also, Duchen v. Milliken Woolens, 19 A D 2d 521.) Conduct such as this would seem clearly to be violative of the Donnelly Act, which proscribes arrangements or combinations “ whereby * * * Competition or the free exercise of any activity in the conduct of any business, trade or commerce * * * in this state is or may be restrained”. (General Business Law, § 340.) Whore the only purpose of the conspiracy charged is the frustration of that legislative intention to encourage competition found in the Donnelly Act, extended analysis is not necessary. (See Van Cise, Understanding the Antitrust Laws [1966], who notes at pp. 100-101, in discussing decisions under the Federal antitrust statutes, whose concept of a conspiracy in restraint of trade is similar to that embodied in the Donnelly Act, that “ [h]orizontal conspiracies whose naked, sole purpose is to fix prices, allocate territory, destroy competition, or boycott suppliers or customers * * * are not ancillary to any lawful main purpose and have uniformly been condemned.”)
In the light of the foregoing, it is clear that plaintiff is entitled to a trial to determine whether the unlawful conspiracy he describes was entered into by the defendants and whether his claimed injury was a result of that conspiracy.
Judges Ftjld, Van Voobhis, Scileppi and Beegan concur in Memorandum; Judge Btjbke dissents in an opinion in which Chief Judge Desmond and Judge Keating concur.
Order affirmed.