Robert E. White, J.
This is a motion to dismiss the amended third-party complaint of Parklane Hosiery Company, Inc., as it relates to Rite Aid Corporation.
New York Lerner Company, Inc., plaintiff’s assignor, leased certain premises located at 124-128 East Main Street, Rochester, New York, to Ralph’s Rochester, Inc. whereby the said tenant covenanted to pay a rental on a monthly basis together with utility charges. In consideration of the landlord entering into the aforesaid lease agreement, defendant third-party plaintiff, Parklane Hosiery, executed an instrument guaranteeing the tenant’s performance of all the terms of said lease. Thereafter the landlord assigned its interest in the said lease to the plaintiff in this lawsuit, Lerner Stores Corporation, whereby the assignee assumed all the right, title and interest of the assignor.
Subsequently, Rite Aid offered to pay to Ralph’s Rochester, Inc., or its sole stockholder, or both, the sum of $50,000 if the said stockholder and Ralph’s would cease all related drugstore operations in the City of Rochester, and further, said offer contained a provision for the purchase of Ralph’s drugstore-related inventory for an additional sum. Upon termination of the retail drugstore operation, Ralph’s commenced the operation of an appliance and general merchandise store. In the terminology of the third-party complaint: "Soon after its commencement, the business encountered serious financial difficulty and began to fail. Upon information and belief, rather than support the new business with funds received *217 from Rite Aid in consideration for terminating Ralph’s Drugstore business, Ralph’s abandoned the business in such a way as to avoid all responsibility for liability and debts * * * and in a manner in which Ralph’s business creditors were calculated not to be able to collect the sums lawfully due and owing to them. They did this by draining the corporation of all its cash and liquid assets * * * leaving a shell with no money to pay debts.”
The basis for the cause of action in the third-party complaint against Rite Aid is section 340 of the General Business Law of this State, commonly known as the Donnelly Act.
The action is predicated upon the civil remedy provided for in subdivision 5 of section 340 of the General Business Law of this State, which reads in pertinent part as follows: "The state, or any political subdivision or public authority of the state, or any person who shall sustain damages by reason of any violation of this section, shall recover three-fold the actual damages sustained thereby, as well as costs not exceeding ten thousand dollars, and reasonable attorneys’ fees.”
This section became effective July 1, 1975 (L 1975, ch 333, § 1) and was an adoption in this State of the terms of the Federal Clayton Act, section 4, cited as section 15 of title 15 of the United States Code. The rights of the aggrieved under the New York Statute must be viewed in the light of the State case law as previously interpreted, coupled with decisions in Federal case law under the analogous statute.
Prior to the adoption of the new provision, New York followed the fundamental precept of civil liability of proximate pause to determine the rights of parties under section 340 of the General Business Law. The complaint had to specifically allege not only that a violation of the statute was committed, but that this violation was a substantial factor in producing the damage sustained. The mere allegation of a violation of the statute and ensuing damage was not sufficient. The causation had to be directly attributable to the violation not remotely responsible. Marsich v Eastman Kodak Co., 152 Misc 54; Rourke v Elk Drug Co., 75 App Div 145; Straus v American Publishers’ Assn., 85 App Div 446, affd 177 NY 473.)
When New York State adopted the language of section 4 of the Clayton Act, it adopted terminology that came with a history of interpretation.
The Federal courts have developed two basic theories of *218 recovery under the Clayton Act. The first is a perpetuation of the concept of proximate cause wherein it is necessary to establish a direct causal link between the violation and the damage. The Federal courts have held that the cause of action sounds in tort and limits the right to sue to those directly injured and have excluded those indirectly or incidentally injured. Under the second theory, the Federal courts have amplified proximate cause by providing a "target area” test to determine standing to sue. This approach finds such "standing” if the plaintiff can establish that he or his business was "aimed at and hit by the illegal activity”. This can mean that the plaintiff is within the area of the economy which is endangered by a breakdown of competitive conditions in a particular industry (Conference of Studio Unions v Loew’s, 193 F2d 51, cert den 342 US 919); or, it can mean that the plaintiff is within the reasonable forseeable area to be affected by the antitrust violations (Mulvey v Samuel Goldwyn Prods., 433 F2d 1073, cert den 402 US 923).
However, even the target area is severely limited and the courts have consistently excluded those who have suffered damage by virtue of a relationship with the targets. In the case of Calderone Enterprises Corp. v United Artists Theatre Circuit (454 F2d 1292, 1295, cert den 406 US 930), the court explains the reason for this line of demarcation on the basis that to rule otherwise would open the flood gates for speculative suits "by every creditor, stockholder, employee, subcontractor or supplier of goods and services that might be affected” resulting in overkill not within the contemplation of Congress.
In the instant case, the third-party plaintiff claims to have been damaged not only by the violation of the General Business Law, but also by a series of acts by the sole stockholder owner of Ralph’s Rochester, Inc., all of which acts were subsequent to the alleged violations. These acts consisted of opening another business with insufficient capital and expertise, abdicating of the responsibility for liabilities, siphoning of profits by Ralph’s and its stockholder, and defrauding of creditors by transferring and concealing assets (allegations contained in third-party complaint at paragraphs 13 through 16). Reviewing these activities in light of the fact that the posture of Parklane Hosiery as nothing more than a guarantor of Ralph’s Rochester, Inc. under the terms of a lease agreement, the damage to Parklane Hosiery was not proximately caused by the alleged violation of the Donnelly Act.
*219 In order to qualify under the second theory of recovery, the third-party plaintiff must be within a "target area” sought to be attacked by the violation of the Donnelly Act. The plaintiff must have been either "aimed at” or forseeably endangered in his business or property by the violation.
In assessing the merit of this action under this latter theory, the court is cognizant that the statute, as interpreted Federally, provides no protection to those that deal with businesses within the target area. This court, however, agrees with the rationale in the Federal case law and adopts the same constraints on "standing to sue” as enunciated in the Federal cases heretofore cited.
There is no showing that the damage sustained by the third-party plaintiff was proximately caused by Rite Aid Corporation’s violation of the Donnelly Act, and the third-party plaintiff was not within the "target area”. Accordingly, the third-party plaintiff does not have "standing to sue” under subdivision 5 of section 340 of the General Business Law.
Motion to dismiss the third-party complaint as against Rite Aid Corporation is granted.